UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:17-cv-03556-CAS(GJSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | J.H. ROSE LOGISTICS, LLC V. BONERTS INCORPORATED ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Harutiun Kassakhian | Alan Forsley |

**Proceedings:** DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT (Dkt. 32, filed October 12, 2017)

## I.   INTRODUCTION

On May 11, 2017, plaintiff J.H. Rose Logistics, LLC initiated this action against defendants Bonert's Inc. d/b/a Bonert's Slice of Pie (hereafter, "Bonert's" or the "bakery") in addition to the bakery's owner, Michael Bonert, and several limited-liability entities: Beefam LLC, Bonert's 3144 LLC, Bonert's MV LLC, Bonert's Jadahasa LLC, and Bonert's Mibon LLC.  Dkt. 1.

On July 31, 2017, defendants filed a motion dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. 18.  On August 21, 2017, plaintiff filed a First Amended Complaint ("FAC") as matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1), thereby mooting defendants' pending motion.  Dkts. 21, 25.  Plaintiff proceeded to file two successive notices of withdrawal and then filed a different version of the FAC on August 23, 2017, which removed Michael Bonert, Jadahasa LLC, and Bonerts 3144 LLC as defendants.  See Dkts. 22, 23, 24, 26.  By stipulation and with the Court's leave, plaintiff filed a Second Amended Complaint on September 13, 2017.  Dkt. 31 ("SAC").

In the operative SAC, plaintiff asserts claims for (1) breach of contract, (2) quasi-contract, (3) fraud and intentional misrepresentation, and (4) negligent misrepresentation against Bonert's, Beefam LLC, Bonert's MV LLC, and Bonert's Mibon LLC.  In brief, the SAC alleges that the now-defunct bakery breached a contract for freight shipping services and refuses to pay plaintiff $209,193.22 in outstanding freight charges.  Plaintiff seeks to hold the various limited-liability entities (hereafter, "the LLCs") liable based on a single-business-enterprise theory of alter ego liability.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-03556-CAS(GJSx) | Date | November 20, 2017 |
| Title | J.H. ROSE LOGISTICS, LLC V. BONERTS INCORPORATED ET AL. | | |

On October 12, 2017, defendants filed a Rule 12(b)(6) motion to dismiss the SAC. Dkt. 32 ("Mot."). On October 30, 2017, plaintiff filed an opposition, dkt. 37 ("Opp'n"); and defendants filed a reply on November 6, 2017, dkt. 38 "(Reply"). Having carefully considered the parties arguments, the Court finds and concludes as follows.

## II.  BACKGROUND

Plaintiff, a New Mexico-based interstate freight broker–carrier, alleges the following facts. SAC ¶ 41–42. Bonert's is a closely held, family-owned corporation that manufactured pies and other baked goods for national retailers such as Walmart and Safeway before it went into receivership on July 28, 2016. Id. ¶¶ 6, 61, 70. Between October 22, 2015 and April 29, 2016, plaintiff transported Bonert's perishable goods to the bakery's consignees, but the bakery has refused to pay plaintiff $209,193.33 in outstanding freight charges. Id. ¶ 73, 78, 80, 83. Plaintiff alleges that the bakery and the LLCs constitute a single business enterprise that "schemed" to "receive free freight transportation" from plaintiff. Id. ¶ 4.

### A.  Alter Ego Allegations

Michael Bonert founded the bakery in 1993 and remains the corporation's president. Id. ¶ 6. He is the trustee of the "Michael Bonert and Vivien Bonert Revocable Trust," which owns shares in the bakery. Id. ¶ 64. From 1998 to 2002, the bakery operated out of a leased facility at 2727 South Susan Street in Santa Ana, California (hereafter, the "Susan Street property"). Id. ¶¶ 6–8.

In June 2000, Michael Bonert organized Beefam LLC. Michael and his wife, Vivien Bonert, were members of Beefam LLC. Id. ¶ 8, Ex. B. In July 2000, the Union Bank of California loaned Beefam LLC $435,000 secured by a deed of trust on another property in Santa Ana, 3122 West Adams Street (hereafter, the "Adams Street property"), which Beefam LLC leased to the bakery. Michael Bonert signed for both Beefam LLC and the bakery, and the lease was not recorded. Id. ¶¶ 12–14, Ex. C. In August 2002, Beefam LLC bought the Susan Street property and leased it to the bakery. Id. ¶¶ 9–10. In May 2008, Beefam LLC granted a deed of trust to First Federal Bank of California, which provided that the LLC's assets would be cross-collateralized to secure a $3,500,000 loan to the bakery. Id. ¶¶ 21–23, Ex. E. And in February 2010, Beefam LLC obtained a $955,000 loan from Manufacturers Bank secured by a deed of trust on the Susan Street property. Id. ¶ 19, Ex. D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-03556-CAS(GJSx) | Date | November 20, 2017 |
| Title | J.H. ROSE LOGISTICS, LLC V. BONERTS INCORPORATED ET AL. | | |

In April 2009, Michael Bonert organized Bonert's MV LLC, and, like Beefam LLC, both he and his wife were members. In July 2009, Bonert's MV LLC leased the Adams Street property to the bakery. Id. ¶ 16–17. Like Beefam LLC, Bonert's MV LLC also provided its assets as collateral to secure loans for the bakery. Id. ¶ 18.

In December 2014, Bonert's Mibon LLC filed a Statement of Information with the California Secretary of State listing Robert Erikson as president and Michael Bonert as a member. Plaintiff alleges "[t]hese names do not reflect who really controlled" the LLC. Id. ¶ 33. A subordination agreement between Manufacturers Bank, Bonert's Mibon LLC, and the bakery indicates that the LLC owned real property at 3000–3030 West Warner Avenue in Santa Ana (hereafter, the "Warner Avenue property"), rented the property to the bakery, and obtained a loan secured by a deed of trust on the property. Id. ¶ 27, Ex. F. All of the aforementioned leases were not arm's length transactions and none of the leases were recorded. Id. ¶¶ 12, 14–15, 18–19, 38.

Plaintiff alleges that Michael Bonert, as president of Bonert's and the managing member of each LLC, "exercised total domination and control" over the entities and managed them as a single enterprise that "concentrated assets" in the LLCs and "concentrated unsecured debt" in the bakery. Id. ¶ 24–26. Michael Bonert portrayed the bakery and the LLCs as a single enterprise to lenders. Id. ¶ 28. Bonert also "co-mingled" the LLCs' credit lines, equity in real estate, and rental income with the bakery's assets, debts, and income streams. Id. ¶ 29. Michael Bonert refinanced the bakery's loans with the LLCs' real estate assets as collateral because the bakery was "undercapitalized." Id. ¶ 38. Plaintiff alleges that the LLCs "had no independent business purpose from" the bakery. Id. ¶ 25.

Around the same time as the bakery went into receivership, on July 29, 2016, Vivien Bonert signed on behalf of Bonert's Mibon LLC to sell off a significant portion of the LLC's assets, including the Warner Avenue property, in order satisfy the secured debts of the bakery and the LLCs. Id. ¶¶ 34–36. At the time the SAC was filed, the bakery and the LLCs were all operating out of Michael Bonert's personal home in Beverly Hills, California. Id. ¶¶ 108, 115, 121.

**B.     Fraud Allegations**

Plaintiff started shipping Bonert's baked goods to retailers throughout the United States in June 2012. Id. ¶¶ 47, 78. However, Bonert's became insolvent in May 2015 and was unable to pay the freight charges. Id. ¶¶ 50–51. As an unpaid carrier, plaintiff had the right to exercise a possessory lien against the bakery's cargo; however, exercising

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:17-cv-03556-CAS(GJSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | J.H. ROSE LOGISTICS, LLC V. BONERTS INCORPORATED ET AL. | | |

this right would have prevented the bakery from securing new loans to keep the business running. Id. ¶¶ 53, 57.

On March 16, 2016, Bonert's Chief Financial Officer ("CFO"), Jeff Ritchey ("Ritchey") spoke with plaintiff's Terminal Manager, Clay Bush ("Bush"). Ritchey promised that the bakery would pay plaintiff $20,000 per week until it had paid off the outstanding freight charges. Id. ¶ 87. One payment was made on March 23, 2016. Id. ¶ 89. On April 6, 2016, Ritchey told Bush that the bakery would use funds that the bakery was going to receive from a "finance company" to continue the weekly payments. Id. ¶ 88. Ritchey "falsely claimed" to Bush that the bakery's payments to plaintiff were "contingent" on the bakery's "receipt of loan monies" and that the bakery "had not yet received loan monies from its lender." Id. ¶ 97.

On April 21, 2016, the bakery obtained a $416,499 loan from National Funding. Id. ¶ 91, Ex. I. On April 29, 2016, the bakery failed to make any payment to plaintiff. Id. ¶ 89. On May 10, 2016, Ritchie emailed Bush and stated that the bakery was close to completing the bakery's "financing agreement" at which time the bakery would resume payments. Ritchie's email referenced the bakery's efforts to obtain a loan from GemCap Lending, LLC, but failed to disclose that National Funding already loaned the bakery $416,499. Id. ¶ 92. Plaintiff detrimentally relied on Ritchie's statements and failed to exercise possessory liens against the bakery's cargo.

## III. LEGAL STANDARD

A motion pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-03556-CAS(GJSx) | Date | November 20, 2017 |
| Title | J.H. ROSE LOGISTICS, LLC V. BONERTS INCORPORATED ET AL. | | |

from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

## IV. DISCUSSION

Defendants do not dispute that plaintiff has a valid breach of contract claim against Bonert's. Rather, they contend that plaintiff has not and cannot sufficiently allege alter ego liability as to the LLCs and fails to state a claim for fraud. Mot. at 1–2.

### A. Alter Ego Liability

"Generally, alter ego liability is reserved for the parent-subsidiary relationship. However, under the single-enterprise rule, liability can be found between sister companies." Las Palmas Assocs. v. Las Palmas Ctr. Assocs., 235 Cal. App. 3d 1220, 1249 (1991). "The 'single-business-enterprise' theory is an equitable doctrine applied to reflect partnership-type liability principles when corporations integrate their resources

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL  'O'

| Case No. | 2:17-cv-03556-CAS(GJSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | J.H. ROSE LOGISTICS, LLC V. BONERTS INCORPORATED ET AL. | | |

and operations to achieve a common business purpose." Toho-Towa Co. v. Morgan Creek Prods., Inc., 217 Cal. App. 4th 1096, 1106–07 (2013) (internal quotation marks omitted) (citing 1 Fletcher Cyc. Corp. § 43)).

To state a claim for alter ego liability based on a single-enterprise theory, a plaintiff must adequately allege that: "(1) such a unity of interest and ownership that the separate corporate personalities are merged, so that one corporation is a mere adjunct of another or the two companies form a single enterprise, and (2) an inequitable result if the acts in question are treated as those of one corporation alone." Gopal v. Kaiser Found. Health Plan, Inc., 248 Cal. App. 4th 425, 431 (2016) (citing Las Palmas, 235 Cal. App. 3d at 1249–50). "Conclusory allegations of 'alter ego' status are also insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting . . . the necessary elements." Gerritsen v. Warner Bros. Entm't Inc., 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015).

"Whether a party is liable under an alter ego theory is a question of fact" that depends on the "circumstances of each particular case." Leek v. Cooper, 194 Cal. App. 4th 399, 418 (2011); see also Baize v. Eastridge Cos., 142 Cal. App. 4th 293, 302 (2006) ("There is no litmus test to determine when the corporate veil will be pierced.") "Factors that the court may consider include 'the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other.' " Wehlage v. EmpRes Healthcare, Inc., 791 F. Supp. 2d 774, 782 (N.D. Cal. 2011) (quoting Troyk v. Farmers Group, Inc., 171 Cal.App.4th 1305, 1342 (2009)); accord Toho-Towa, 217 Cal. App. 4th at 1108.

First, defendants argue that plaintiff cannot allege alter ego liability because none of the LLCs are shareholders of the bakery. Mot. at 8. For this proposition, defendants rely on S.E.C. v. Hickey, a case in which the Ninth Circuit held that an individual cannot be considered the alter ego of a corporation unless he also has an ownership interest in that corporation. 322 F.3d 1123, 1128–30 (9th Cir. 2003). However, the Ninth Circuit has since recognized that Hickey "did not foreclose the possibility that equitable ownership might be sufficient in some contexts." In re Schwarzkopf, 626 F.3d 1032, 1038 (9th Cir. 2010). More importantly, the "single-enterprise rule presents a clear exception" to the ownership requirement in the corporate context. Baron & LaMothe, California Civil Practice: Business Litigation (The Rutter Group 2017) ¶ 5:9 (citing Las

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-03556-CAS(GJSx) | Date | November 20, 2017 |
| Title | J.H. ROSE LOGISTICS, LLC V. BONERTS INCORPORATED ET AL. | | |

Palmas, 235 Cal. App. 3d at 1249); see also Toho-Towa, 217 Cal. App. 4th at 1109 (finding that a corporation and its two foreign affiliates were a single business enterprise where a single person owned and was the sole decision maker for all three entities). Accordingly, plaintiff is not required to demonstrate that the LLCs themselves had an ownership interest in the bakery to assert alter ego liability.

Turning to the two-part test, defendant first contends that plaintiff has not sufficiently alleged a "unity of interest" between the bakery and the LLCs because the SAC's allegations are conclusory. Mot. at 8–9. However, the SAC includes specific factual allegations that, when taken together, are sufficient to demonstrate unity of interest under the single-enterprise framework. Most importantly, plaintiff alleges that Michael Bonert, as the president of the bakery and the managing member of each LLC, exercised total control over all four entities. According to the SAC, Michael Bonert operates the LLCs out of his personal home, and these entities served no other purpose apart from holding the bakery's real estate assets. Plaintiff further alleges that the bakery and the LLCs comingled assets by sharing lines of credit with the same lenders, which were secured by deeds of trust on properties owned by the LLCs and leased to the bakery through non-arm's length transactions. In light of these allegations, plaintiff has sufficiently alleged a unity of interest between the bakery and the LLCs such that they should be considered a single enterprise.

Second, defendants argue that plaintiff fails to show that an "inequitable result" would follow if the breach of contract is treated as the act of the bakery alone. Mot. at 9–10. Defendants contend that there are "no allegations of any wrongdoing" here because the LLCs were entitled to collateralize the loans for the benefit of the bakery and provide preference payments to its secured creditors. See Cal. Civ. Code § 3432 ("A debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another."). Defendants rely on Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523 (2000), in which the court explained that the "alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form." Id. at 539. In that case, a school district sued a Nevada mining corporation doing business in California and its Canadian corporate parent. Id. at 529. The court found "no evidence of any wrongdoing" when the parent made cash advances to the subsidiary "because none were shown to have been made with a fraudulent or deceptive intent." Id. at 539.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:17-cv-03556-CAS(GJSx) | Date | November 20, 2017 |
|---|---|---|---|
| Title | J.H. ROSE LOGISTICS, LLC V. BONERTS INCORPORATED ET AL. | | |

While there was no evidence of bad faith in <u>Sonora Diamond</u>, here, on the other hand, plaintiff specifically alleges wrongdoing. When the bakery became insolvent and stopped paying its freight bills, plaintiff refrained from exercising its possessory lien rights over the cargo, which allowed the bakery to stay in business and secure new loans. The bakery's CFO, Ritchey, made assurances that the bakery would use loan proceeds to pay down the outstanding freight charges. However, even after receiving a loan from National Funding, the bakery failed to make any payments and failed to disclose that it had received the loan. Then, in short order, the bakery went into receivership and the LLCs sold off the venture's real estate assets to satisfy debt owed to its secured creditors. The SAC alleges that based on Ritchey's false and misleading statements, plaintiff was prevented from exercising its lien rights in time to recover its losses. Thus, plaintiff is not just an unsatisfied creditor; the SAC includes specific allegations of bad faith on behalf of defendants. Under these circumstances, adhering to the fiction that the bakery and the LLCs are separate business entities would promote injustice.

Accordingly, the Court finds that plaintiff has alleged sufficient facts to warrant holding the LLCs liable for the bakery's acts based on a single-enterprise-theory of alter ego liability.

### B. Fraud Claim

In addition, defendants argue that plaintiff has failed to state a claim for fraud and intentional misrepresentation against the bakery. Under California law, " '[t]he elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." <u>Lazar v. Superior Court</u>, 12 Cal. 4th 631, 638 (1996).

Here, the SAC alleges that Ritchey promised plaintiff's manager, Bush, that the bakery was going to pay $20,000 per week until the outstanding freight charges were paid off. Based on this promise, plaintiff decided to forgo exercising its possessory lien rights against the bakery's cargo. Ritchey then made false representations to Bush that the bakery would soon obtain additional financing and use the funds to resume weekly payments. After securing a loan from National Funding, Ritchey emailed Bush and stated that the bakery was close to completing a financing agreement with a separate firm, GemCap Lending, at which time the bakery would resume payments. But Ritchey failed to disclose that the bakery had already received the National Funding loan and was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-03556-CAS(GJSx) | Date | November 20, 2017 |
| Title | J.H. ROSE LOGISTICS, LLC V. BONERTS INCORPORATED ET AL. | | |

thus able to resume payments. Plaintiff alleges that it detrimentally relied on Ritchey's false promises and accordingly failed to exercise its lien rights against the bakery's cargo before the bakery went into receivership.

Two theories of fraud appear relevant here: promissory fraud and fraudulent concealment. "Promissory fraud is a subspecies of fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." Lazar, 12 Cal.4th at 638. To plead promissory fraud, a plaintiff must plead the same elements as he would if asserting a general fraud claim. Engalla v. Permanente Medical Group, Inc., 15 Cal.4th 951, 974 (1997). Fraudulent concealment, on the other hand, occurs when (1) the defendant conceals or suppresses a material fact, (2) the defendant had a duty to disclose the fact to the plaintiff, (3) the defendant intentionally concealed the fact with the intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would not have acted as he did if he had known; and (5) as a result of the concealment, the plaintiff sustained damage. SCC Acquisitions Inc. v. Cent. Pac. Bank, 207 Cal. App. 4th 859, 864 (2012). There are four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts. Id.

Defendants contend that Ritchey's statements regarding anticipated financing from various lenders do not constitute actionable fraud "because the representations concern a future event or future action by a third party." Mot. at 11. Defendants cite the general rule that "[p]redictions as to future events, or statements as to future action by some third party, are deemed opinions, and are not actionable fraud." Borba v. Thomas, 70 Cal. App. 3d 144, 152 (1977) (citation omitted). There are three exceptions to this general rule: (1) where a party holds himself out to be specially qualified and the other party is so situated that he may reasonably rely upon the former's superior knowledge; (2) where the opinion is by a fiduciary or other trusted person; and (3) where a party states his opinion as an existing fact or as implying facts which justify a belief in the truth of the opinion. Id. (citing 4 Witkin, Summary of Cal. Law (8th ed.) Torts, §§ 448–450, at 2712–15).

Plaintiff alleges two distinct theories of fraud. First, plaintiff alleges that Ritchey falsely promised to pay the bakery's outstanding freight charges in $20,000 installments

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| | | | |
|---|---|---|---|
| Case No. | 2:17-cv-03556-CAS(GJSx) | Date | November 20, 2017 |
| Title | J.H. ROSE LOGISTICS, LLC V. BONERTS INCORPORATED ET AL. | | |

per week, which induced plaintiff to forgo its lien rights. Second, plaintiff alleges that Ritchey fraudulently concealed material information from plaintiff, namely that the bakery had already received a loan from National Funding, and therefore the bakery had funds to resume weekly payments but failed to do so as promised. Neither of these allegations are based on "[p]redictions as to future events, or statements as to future action by some third party." Borba, 70 Cal. App. 3d at 152. In sum, there appear to be at least two bases for plaintiff to state a claim for fraud, and the Court finds defendants' argument for dismissal at this stage to be unavailing. These types of claims are generally better left for summary judgment.

## V.  CONCLUSION

In accordance with the foregoing, the Court hereby **DENIES** defendants' motion to dismiss the SAC. Defendants shall have 20 days from the date of this order to file an answer.

**IT IS SO ORDERED**.

|  | 00 | : | 01 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |